36 C.C.P.A.(Patents)

### Application of GOOKIN.
### Patent Appeal No. 5579.

United States Court of Customs and Patent Appeals.

April 12, 1949.

W. Bigelow Hall, of New York City (William E. Schuyler, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner requiring division between two groups of claims in appellant's application for a patent for "certain improvements in Hoppers and Raceways."

The application contained one group of claims which were allowed, Nos. 1, 2, 3, and 4, drawn to the construction of the hopper, and claim 5, drawn to a hopper-raceway combination, which was rejected by the

examiner on the ground of misjoinder of inventions. For the purposes of appeal, the examiner admitted an additional claim, No. 6, since that claim did not differ in subject matter from claim 5. Claims 5 and 6 were then considered as a group and rejected by the examiner on the ground of misjoinder, and his action in so doing was affirmed by the Board of Appeals.

The question presented involves the propriety of the requirement of division between one group of claims, Nos. 5 and 6, on the one hand, and another group of claims, Nos. 1, 2, 3, and 4, on the other hand. Therefore, it is deemed necessary to a clear understanding of the issue to here reproduce, for example, allowed claim 1 and rejected claim 6, which are considered representative of the respective groups of claims. They read:

"1. A hopper having an opening in the bottom for discharging residual contents, a gate formed and arranged to close said opening, a rotatable hinge-pin on which the gate is arranged to swing to and from said opening, bearing means in which said pin is journaled, means for transmitting rotation to said pin, rotatable means carried by the gate for stirring the contents of the hopper, and means arranged to transmit rotation from said pin to said stirring means."

"6. A hopper-and-raceway assemblage for cooperating with an eyeleting machine having a reciprocatory operating member, the hopper having an inclined eyelet-supporting surface and chamber-forming walls extending upwardly therefrom, one of said walls having an opening through which eyelets lying on said surface may gravitate therefrom, an inclined raceway the upper end of which is located in said opening, means for supporting said upper end in register with said inclined surface, and coupling means by which the lower end of the raceway is operatively connected to said operating member and by which the upper end of the raceway is maintained in said opening."

The tribunals of the Patent Office, for the purposes of division, relied upon the following references, the numerals following the dates of the respective patents being the official classification numbers indicating the class and subclass for such patents:

| White | 1,739,996 | Dec. 17, 1929 | 218-12 |
| Newhall | 2,036,352 | Apr. 7, 1936 | 218-15.1 |
| Thomason | 2,248,139 | July 8, 1941 | 218-2.1 |
| Gookin | 2,254,215 | Sept. 2, 1941 | 218-15.1 |

The subject matter of the two groups of claims was succinctly described by the board as follows:

"Appellant discloses a hopper and raceway organization for supporting eyelets to an eyeleting machine. The hopper has an inclined bottom wall and chamber forming walls extending upwardly therefrom. The hopper has means to discharge eyelets therefrom in its normal operation. The inclined bottom wall has an opening therein which is normally closed by a gate, such gate being opened by a handle when it is desired to empty the hopper. The hopper is provided with a brush which rotates when the gate is closed and thereby stirs the eyelets to feed them to the raceway. This brush is also effective when the gate is open to empty the hopper.

"The raceway is projected at its upper end into an opening at the bottom of the hopper and is formed to contact with the lower margin of the gate. The lower end of the raceway is so supported that it may be reciprocated sidewise. Coupling means are provided between the actuating member (for reciprocation) and the bottom of the raceway so that, when coupled, the upper end of the raceway is maintained in the hopper opening. The coupling is such that the raceway may be readily disengaged and entirely removed from the hopper."

The examiner is his statement pointed to the fact that his description of each of appellant's two inventions, as defined in the respective groups of claims, did not in one invention require reference to the other, due to the complete independence of the two inventions; that the patents cited by him showed that separate status in the art had been attained by each of those inventions, and that they required diverse collateral fields of search. The board affirmed the action of the examiner in his requirement of division on the grounds and for the reasons stated by him.

The decision of the board, appellant contends, should be reversed for the alleged reason that the two groups of claims, being in the nature of combination and subcombination claims, cooperate with each other toward the solution of a single unitary problem and are so mutually dependent on one another in producing a single result that, in accordance with the provisions of rule 41 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix both groups of claims should be included in the same application. "Moreover," appellant asserts in his brief, "assuming the necessity for the divergent collateral fields of search, this has nothing to do with the soundness of the rejection on the ground of misjoinder."

The board in its decision made a clear and unqualified statement that the hopper defined in claims 1, 2, 3, and 4 has general and independent utility apart from the general combination and can be separately operated when disassociated from any raceway. The truth of that statement has not been challenged by appellant. Appellant likewise has not challenged the validity of the further statement in the decision of the board that "Certainly the allowability of the combination claims 5 and 6 does not depend for novelty on details of the hopper structure and such details are not recited therein." On the contrary, appellant, having quoted that statement, states in his brief that "It is true that the hopper is not defined in the combination claims in the same language as in claims 1 to 4."

Appellant takes the position that in an application containing combination and subcombination claims it is not necessary that the subcombination be defined by the applicant with the same particularity in the combination claims as it is defined in the subcombination, citing C. & R. Research Corporation v. Write, Inc., 3 Cir., 19 F.2d 380; that "in considering a question of misjoinder between combination and element claims, that, when the element described in a claim is but one element of a combination described in another claim, the inventions may be joined so long as the inventions are co-related and in unity,"

citing In re Rupert E. Rundell, 55 F.2d 450, 19 C.C.P.A., Patents, 932; and that it is common practice on the part of the Patent Office, as exemplified by the art relied upon by the board in affirming the rejection, of the examiner, to grant patents with both combination claims and subcombination claims in which the feature of the subcombination claims is defined with more particularity than it is in the combination claims.

The statement in the decision of the board that the hopper defined in allowed claims 1, 2, 3, and 4 has independent and general utility must be accepted by the court as correct, since that statement has been in nowise controverted by appellant. In re Freeman, 104 F.2d 187, 26 C.C.P.A., Patents, 1265. Furthermore, appellant's contention that the Patent Office has allowed both types of claims in the same patent in other cases is not material here, since the question of misjoinder of inventions must be determined on the merits in each case according to the facts therein presented. In re Hirschhorn, 162 F.2d 489, 34 C.C.P.A., Patents, 1156, 1159.

The Solicitor for the Patent Office correctly points out that the case of C. & R. Research Corporation v. Write, Inc., supra, was an infringement suit tried in a court of equity, in which the District Court held that where a machine had been patented as a whole, it was permissible to join combination and element claims in the same patent, and that no substantial question was there raised that the joinder of such claims affected their validity. Obviously, that doctrine does not establish a binding rule that a plurality of unrelated inventions may be included in appellant's application here in issue and that the requirement of division cannot be applied thereto by the tribunals of the Patent Office.

The case of In re Rupert E. Rundell, supra, does not show that the different groups of claims there involved were unrelated, as is shown by the record in the instant case. The decision in the Rundell case, as this court subsequently and correctly pointed out, was based upon the fact that there was no satisfactory showing in the record that the element there claimed

**1004**

had, or was designed to have, any general and independent utility other than in the claimed combination. See In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023. See also In re Coulter, 155 F.2d 271, 33 C.C.P.A., Patents, 1088.

The decisions in the two cases last cited discussed numerous authorities and quoted with approval the following statement from an article by C. H. Pierce, published in the Journal of the Patent Office Society, Volume 1, No. 9, page 465, as expressing the rule to be applied in considering whether division between subcombination claims and combination claims is proper:

" * * * it is believed to be the more modern doctrine and practice that where an element or subcombination which is claimed in the same case with a combination of which it forms a part, even if that combination be new, is clearly capable of use apart from the combination and in other relations and not restricted in its design, operation and capabilities to use therewith, and if in addition there is a developed state of the art in relation to it, constituting a different field of activity and search, division may be required without awaiting determination of the novelty of the combination."

The record in the case at bar shows that the claimed element, namely, the hopper, was clearly capable of independent use apart from the combination and in other relations and was not restricted in its design and operation to use therewith. Furthermore, as the board correctly held, the art relied upon by the examiner justified his holding that each of the devices claimed by appellant had developed a state of the art in relation to it which constituted a different field of activity and search, and that there was no showing in the record which constituted a basis for holding that the involved claims are dependent and should be included in the same application.

In view of that conclusion, it is deemed unnecessary that we refer to other arguments presented here by counsel for the respective parties, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed